UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | \* |
| | \* |
| v. | \* |
| | \* Criminal No. 19-cr-10361-IT |
| YAMEL CUEVAS-GONZALEZ and | \* |
| CARLOS NUNEZ, | \* |
| Defendants. | \* |
| | \* |

MEMORANDUM & ORDER

June 23, 2021

TALWANI, D.J.

Before the court is Defendant Carlos Nunez's Motion to Suppress Evidence [#79]. Nunez and an alleged coconspirator, Defendant Yamel Cuevas-Gonzalez, were arrested following a series of controlled buys of large quantities of fentanyl. After their arrest, investigators seized Nunez's car and, in the following days, performed a thorough search of the vehicle. The search uncovered a secret compartment (a "hide") containing a plastic bag with $4,000 in cash (and Nunez's fingerprint on the bag). Nunez's motion contends that the court should suppress all evidence of the hide and the contents found therein on the basis that the officers did not have probable cause to perform the search. As set forth further below, the court finds that the officers had probable cause to believe that the vehicle, which had been used to transport the fentanyl to two controlled buys, contained other contraband and/or evidence of the offense and that any such items may have been concealed within the car. Because officers had probable cause to search the vehicle (and any hidden compartments therein), the search falls within the automobile exception to the warrant requirement. Accordingly, Nunez's motion to suppress the fruits of that search is DENIED.

I. Factual Background

In December 2018, a Dominican citizen thought to be working with Mexican drug cartels contacted a Source of Information ("Source") and indicated that he was looking to traffic shipments of ten to fifteen kilograms of heroin and/or cocaine into Massachusetts on a regular basis. Howes Aff. ¶ 5 [#1-2]. The Source indicated that he was not interested in the proposed arrangement and instead connected the Dominican citizen with a Confidential Witness ("CW") who had been cooperating with the government since 2008 and with Special Agent Geoffrey Howes of Homeland Security Investigations since 2016. Id.

In February 2019, Defendant Cuevas-Gonzalez contacted the CW and identified himself as a friend of the Source. Id. ¶ 6. In March 2019, Cuevas-Gonzalez and the CW began discussing the sale and purchase of heroin and cocaine. Id. ¶ 8.

Working with Agent Howes and Sergeant Julio DeFigueiredo of the Bristol County Sheriff's Office—who serves as a Task Force Officer with Homeland Security Investigations, DeFigueiredo Aff. ¶ 1 [#83-1]—the CW arranged for controlled buys in May, June, and August 2019. Howes Aff. ¶¶ 10–20 [#1-2]. The first transaction took place on May 6, 2019, and involved the purchase of a half kilogram of fentanyl in exchange for $25,000. Id. ¶ 11, n.4. The second and third transactions took place on June 10, 2019, and August 5, 2019, respectively, and were each for one kilogram[1] of fentanyl in exchange for $48,000. Id. ¶¶ 13, 16, 19. Each transaction was witnessed by the officers in real time and recorded by surveillance equipment. Id. ¶¶ 11, 16, 20; Hr'g Tr. 12 [#156].

---

[1] The day before the second transaction, Cuevas-Gonzalez advised the CW that he had an extra half kilogram of fentanyl available. The CW advised Cuevas-Gonzalez that he did not have funds to purchase the additional drugs at that time. Id. ¶ 13. However, Cuevas-Gonzalez delivered the entire 1.5 kilograms of fentanyl. Id. ¶ 17.

2

Cuevas-Gonzalez arrived at the first transaction in a car registered to a woman in Connecticut. Howes Aff. ¶ 10 [#1-2]. There is no direct or circumstantial evidence in the record suggesting that Nunez was present at this transaction and the government has not charged Nunez as to that transaction.

Cuevas-Gonzalez arrived at the second and third buys in a Honda Accord sedan registered to Defendant Carlos Nunez.[2] Hr'g Tr. 17 [#156], Howes Aff. ¶¶ 15, 20 [#1-2]. Following the third transaction, officers intercepted the car and arrested Nunez (who was driving the vehicle) and Cuevas-Gonzalez. Howes Aff. ¶ 20 [#1-2].

When Nunez and Cuevas-Gonzalez were arrested, officers seized the vehicle and searched the passenger compartment and the trunk. Hr'g Tr. 54 [#156]. This search did not reveal any indication of a hide. Id. at 55. The officers then towed the vehicle to a secure storage facility. HSI Report 4 [#79-1]. Three days later, on August 8, 2019, investigators obtained the assistance of a Boston Police Department Detective, William Feeney, who specializes in finding aftermarket concealed compartments. HSI Report 2 [#79-2]. Detective Feeney concluded that there was likely a hide in the car after removing a piece of plastic from behind the center console and finding that there were several wires not correctly placed. Id.; Hr'g Tr. 57–58 [#156]. Based on this discovery, Detective Feeney used a magnet to operate a motor that "lifted" the center console, providing access to the hidden compartment. HSI Report 2 [#79-2]. Inside the compartment, officers found $4,000 in cash in a plastic bag with Mr. Nunez's fingerprint on it.. Id.; Hr'g Tr. 59–60, 63.[3] On August 13, 2019, officers from Customs and Border Protection

---

[2] There is no direct evidence establishing that Nunez was present at the second transaction, but the government points to circumstantial evidence, namely the presence of his vehicle and financial records suggesting he was in the vicinity on the date of the second buy. Gov't's Opp'n 3 [#82].

[3] During this search, investigators also found a cell phone in the rear driver's side door that was

performed a third search of the vehicle using canine screening, x-rays, and fiber optics. HSI Report 2 [#79-3]; Hr'g Tr. 55 [#156]. The search by Customs and Border Patrol did not reveal any other contraband or secret compartments. However, the search did reveal a magnet that officers associated with the previously discovered hide. Id.; Hr'g Tr. 54 [#156].

II. Discussion

Nunez's motion asks that the court suppress the following evidence: 1) photographic and video evidence of the hidden compartment, and any testimony about the existence of the compartment; 2) the plastic bag of cash seized from the compartment; 3) any fingerprints recovered from the compartment and/or bag; 4) the cell phone and magnet discovered during the August 8, 2019 and August 13, 2019 searches, respectively; and 5) any other fruits of the unlawful searches. Def.'s Mot. 1 [#79]. Nunez argues that the searches resulting in the discovery of this evidence violated Nunez's rights under the Fourth Amendment to the federal Constitution.

Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 556 U.S. 332, 338 (2009) (citing Katz v. United States, 389 U.S. 347, 357 (1967)). Here, the government contends that each search of Nunez's vehicle fell within the automobile exception to the warrant requirement, which provides that officers may perform a warrantless search of a vehicle so long as the officer has probable cause for believing that the vehicle contains contraband. See Carroll v. United States, 267 U.S. 132, 154 (1925). As the Court later set forth in United States v. Ross, the automobile exception to the warrant requirement authorizes officers to search all parts of a car that the officers have probable cause to search. 456 U.S. 798, 825 (1982) ("We hold that the scope of the warrantless search authorized by that exception is no broader and no narrower than a

---

"missed" during the initial search of the vehicle. Hr'g Tr. 55 [#156]; HSI Report 2 [#79-2].

4

magistrate could legitimately authorize by warrant"). Thus, "[i]f probable cause justifies the search of a lawfully stopped vehicle, *it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.*" Ross, 456 U.S. at 825 (emphasis added); see also California v. Acevedo, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained").

Here, Nunez contends that the officers did not have "particular facts indicating that, at the time of search, the vehicle or a container within it carried contraband, evidence of crime, or other seizable matter." Nunez Mem. 3 [#168] (quoting United States v. Infante-Ruiz, 13 F.3d 498, 502 (1st Cir. 1994)). Nunez reaches this conclusion by assuming that once the officers confiscated the kilogram of fentanyl and the $48,000 associated with the specific transaction at issue, the officers "had no probable cause to believe that [Nunez's car] contained *other* drugs" nor, Nunez argues, did the officers have "information suggesting the use of a secret compartment." Nunez Mem. 4–5 [#163] (emphasis added); see also Nunez Mot. 6–7 [#79].

The government initially responded directly to Defendant's argument, contending that probable cause supported the search for a hidden compartment based on Officer DeFigueiredo's conclusion that Nunez's car had a hide. See Gov't Opp'n 4 [#83]; DeFigueiredo Aff. ¶ 3 [#83-1]. Based on this representation, the court scheduled an evidentiary hearing to take Officer DeFigueiredo's testimony and delayed the evidentiary hearing for several months due to Officer DeFigueiredo's unavailability. Ultimately, Officer DeFigueiredo was unable to testify, and the court only took testimony from Agent Howes. Agent Howes testified that Officer DeFigueiredo concluded that there was a hide while monitoring a conversation between the CW and Cuevas-Gonzalez. Hr'g Tr. 24 [#156]. While a transcription of the conversation between the CW and

5

Cuevas-Gonzalez is in the record, see Def.'s Mem. 3 [#162] (revised portion of transcript), the transcription, without more, is not particularly revealing. Based on this evidentiary record,[4] the court cannot independently ascertain the basis for DeFigueiredo's conclusion that the vehicle contained a hide.

Nonetheless, both Nunez's argument and the government's initial opposition conflate the question of whether officers had *specific knowledge* as to what the car contained with the pertinent question of whether the officers had *probable cause* under the circumstances to believe that Nunez's car contained additional and yet-to-be discovered drugs, money, or other evidence of the crime. After the evidentiary hearing, the government changed course and argued that Officer DeFigueiredo's testimony was mere surplusage since the undisputed circumstances around the seizure of Nunez's vehicle provided the officers probable cause to search the vehicle for any hidden contraband or other evidence of the crime. See Gov't's Supp. Opp'n 5 [#161] ("The court could give no weight at all to [DeFigueiredo's] determination. It would not change the fact that . . . the government presented evidence of large-scale drug transactions") (internal quotation omitted).

For a search to be supported by "probable cause," the question is whether "the facts available to the officer would 'warrant a man of reasonable caution in the belief'" that the search would recover contraband, stolen property, or evidence of a crime. Texas v. Brown, 460 U.S. 730, 742 (1983) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). Even if the investigators here had no specific knowledge about the existence of a hide in Nunez's vehicle, it

---

[4] Agent Howes also testified that Cuevas-Gonzalez's movements between his car and the CW's vehicle raised a suspicion of a hide since Cuevas-Gonzalez went into the backseat to obtain the drugs (as opposed to the front seat, which is where he came from at the beginning of the transaction and where he went at the conclusion of the transaction). Hr'g Tr. 32 [#156].

is a reasonable inference that those using vehicles to traffic large amounts of drugs will often attempt to conceal contraband within the vehicle. For this reason, courts within and without this Circuit have held that officers have probable cause to search a vehicle for hidden contraband when officers have probable cause to believe that the vehicle is engaged in drug trafficking, regardless of whether the officers have any specific reason to believe the vehicle contains a hide. For example, in <u>United States v. Goncalves</u>, the First Circuit upheld the lawfulness of a search under the automobile exception largely paralleling the facts here. <u>See</u> 642 F.3d 245, 248 (1st Cir. 2011). There, a confidential witness had informed officers that the defendant was selling large amounts of crack cocaine in the area and officers witnessed two controlled purchases involving the defendant. The officers also knew that the defendant regularly used the car at issue and had previously used the car for a drug delivery. <u>Id.</u> at 249. Following the defendant's arrest, police searched the vehicle for hidden contraband and found drugs in the gas tank cap and a gun under the car's hood. <u>Id.</u> at 248. The defendant argued that even if the police had probable cause to search the car's interior, no probable cause justified searching the engine compartment and gas cap. The First Circuit rejected this argument, citing the Supreme Court's pronouncement in <u>Ross</u> that, if probable cause justifies the search of a car, "it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search." <u>Goncalves</u>, 642 F.3d at 250 (quoting <u>Wyoming v. Houghton</u>, 526 U.S. 295, 301 (1999) (quoting <u>Ross</u>, 456 U.S. at 825)). As the First Circuit wrote, because "common sense" would suggest that drug dealers would hide the contraband in their vehicles, the officers had probable cause to inspect the vehicle for hidden contraband and other evidence of crime. <u>See id.</u> Indeed, other Circuits have upheld warrantless searches for hidden compartments under the automobile exception based on evidence of drug trafficking categorically weaker than the evidence inculpating Defendants here. <u>See, e.g.</u>, <u>United</u>

7

States v. Olivera-Mendez, 484 F.3d 505, 512 (8th Cir. 2007) (finding a search for a hidden compartment based solely upon a canine alert lawful because "drug couriers may conceal contraband in a manner that requires dismantling of the automobile to recover the drugs").

Where, as here, the officers had personally witnessed Nunez's car twice being used to move large quantities of fentanyl and had evidence linking the vehicle to an international conspiracy to move large quantities of controlled substances into Massachusetts, a person of "reasonable caution" would be warranted to believe that a thorough search of the car would recover other contraband or evidence of drug trafficking. Because probable cause supported the officers' search, the search was lawful under the automobile exception to the warrant requirement.

   III.   Conclusion

For the reasons set forth above, Defendant Carlos Nunez's Motion to Suppress Evidence [#79] is DENIED.

   IT IS SO ORDERED.

June 23, 2021
/s/ Indira Talwani
United States District Judge